UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Dawn Edlund,

Plaintiff,

v.

Ridgedale Automotive, Inc., a Minnesota corporation, d/b/a Morrie's Minnetonka Ford, f/k/a Bob Ryan Motors, Inc., and Bob Ryan Motors, Inc., a Minnesota corporation,

Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-1478 ADM/AJB

---

Alfred M. Stanbury, Esq., Stanbury Law Office, Minneapolis, MN, appeared for and on behalf of the Plaintiff.

Julianne E. Ortman, Esq., Raymond C. Ortman, Jr., Esq., and Dominic L. Verstegen, Esq., Ortman and Assoc., Minnetonka, MN, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

On June 18, 2001, this matter came on for hearing before the undersigned United States District Court Judge pursuant to Defendants' Motion for Summary Judgment [Doc. No. 94] and Plaintiff's Motion for Partial Summary Judgment [Doc. No. 115]. For the reasons set forth below, Defendants' motion is granted in part and denied in part and Plaintiff's motion is denied. Plaintiff is also appealing [Doc. No. 88] Magistrate Judge Boylan's May 1, 2001 Order [Doc. No. 86] denying her Motion for Order Requiring Defendant to Post Bond [Doc. No. 77]. The appeal is denied and the Order of Magistrate Judge Boylan is affirmed in its entirety.

AUG - 1 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

## II. BACKGROUND

Plaintiff Dawn Edlund ("Edlund") brings claims against Defendant Bob Ryan Motors[1] ("Ryan Motors") for misrepresentations as to the mileage and collision history of a vehicle she purchased from Ryan Motors. As required on summary judgment, the facts are reviewed in a light most favorable to the party opposing the motion. *FDIC v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).

In February of 1997, Debra Kreatz ("Kreatz") approached Ryan Motors about acquiring a new car. Kreatz decided to lease a 1997 Ford Mustang ("Mustang") on the Ryan Motors lot. Because Kreatz was not purchasing but leasing the Mustang, Ford Motor Credit Company ("FMCC") became the owner of the car and Ryan Motors a liaison between the lessee, Kreatz, and FMCC. Starr Dep. at 89-92, 99; Ryan Dep. at 68, 81-83, 92-93. Kreatz leased the car from FMCC starting in February of 1997. Kreatz Dep. at 12; Starr Dep. at 99; Ryan Dep. at 92-93. During the lease term, Kreatz noticed that the Mustang's odometer was not accurately registering all miles driven. Kreatz Dep. at 17-20, 61. In October of 1997, Kreatz brought the car into Ryan Motors to check the odometer. *Id.* at 17; Ex. 2 at 37. Although Ryan Motors noticed that the odometer was off during a road test, it did not make any repairs. Kreatz Dep. Ex. 2 at 37; Ryan Dep. at 104-06. After she picked up the Mustang from Ryan Motors, Kreatz felt the odometer was working properly. Kreatz Dep. at 61-62. In September 1998, Kreatz was involved in a collision while driving the Mustang. *Id.* at 91; Ex. 2 at 58-59. The vehicle was repaired by Superior Ford, Inc. for approximately $9,000. *Id.* Ex. 1 at 3.

---

[1]Because of Ridgedale Automotive/Morrie's Minnetonka Ford's relationship to Ryan Motors, both parties assume there is essentially one Defendant, Ryan Motors.

When the lease expired in March of 1999, Kreatz returned the Mustang to Ryan Motors. Kreatz Dep. Ex. 2 at 34; Ryan Dep. at 68. As part of the processing of the vehicle's return, Kreatz and Ryan Motors employee Jean Holm ("Holm") completed an odometer disclosure statement ("ODS") listing the Mustang's mileage as true to the odometer's reading of 9,238 miles. Kreatz Dep. at 58-59; Stanbury Aff. Ex. 2. Kreatz told Holm at that time that the odometer had previously malfunctioned and was understated by around 300 miles. Kreatz Dep. at 59, 89; Michael Kreatz Dep. ("M. Kreatz Dep.") at 10-12. Nevertheless, Kreatz signed the ODS certifying the Mustang's odometer reading as accurate. Kreatz Dep. at 89-91; Stanbury Aff. Ex. 2. At the time, Kreatz believed that the odometer was off by 300, and at most 500, miles. Kreatz Dep. at 75. Kreatz also told Ryan Motors about the 1998 accident at this time. *Id.* at 97-100.

When Kreatz's lease ended, Ryan Motors exercised its right to purchase the Mustang from FMCC. Ryan Dep. at 68-69; Starr Dep. at 100. On May 15, 1999, Edlund purchased the Mustang from Ryan Motors. Edlund Dep. at 7; Ryan Dep. at 82-83. Ryan Motors certified to Edlund that the Mustang's odometer reading was accurate. Stanbury Aff. Ex. 5. Ryan Motors also certified that to the best of its knowledge the Mustang had not "sustained damage in excess of 70% of the actual cash value." *Id.* Ex. 5. After acquiring ownership, Edlund soon noticed that the odometer was not working and brought the Mustang into Ryan Motors for repair on May 25, 1999. Edlund Dep. at 108-10; Stanbury Aff. Ex. 6. After test driving the vehicle, Ryan Motors determined that the odometer was "bad" and needed to be replaced. Stanbury Aff. Ex. 6. Edlund refused Ryan Motors' offer to repair the odometer without charge. Edlund Dep. at 108-09.

## III. DISCUSSION

Edlund has essentially two claims against Ryan Motors. Count I concerns a claim of

fraudulent misrepresentation, where Edlund alleges that Ryan Motors misrepresented to her the mileage of the Mustang. Count II is a claim under the odometer provisions of the Motor Vehicle Information and Cost Savings Act of 1972 ("Odometer Act"), 49 U.S.C. §§ 32701-32711, for (1) misrepresenting the actual mileage of the Mustang and (2) failing to disclose that the Mustang had been previously damaged in a serious collision. The parties have filed cross-summary judgment motions. Edlund has also filed an appeal of Judge Boylan's May 1, 2001 Order, which denied her request to require Ryan Motors to post a $100,000 prejudgment bond.

**A. Cross-Summary Judgment Motions**

Edlund's Partial Summary Judgment Motion asks for judgment in her favor on the Odometer Act claim. Ryan Motors has made a Summary Judgment Motion requesting the dismissal of both the Odometer Act and fraudulent misrepresentation claims. The critical issue in these cross-motions is determining if there is evidence of Ryan Motors' intent to defraud Edlund. Because issues of fact remain, both summary judgment motions are denied. "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Cooper v. Olin Corp.*, 246 F.3d 1083, 1087 (8th Cir. 2001).

**1. Odometer Act**

The Odometer Act mandates that a seller of an automobile disclose "the cumulative mileage registered on the odometer", or, if the actual mileage is unknown, the fact that the "odometer reading is different from the number of miles the vehicle has actually traveled." 49 U.S.C. § 32705(a)(1). It is illegal to give a false statement when complying with this regulation. *Id.* § 32705(a)(2). Private persons who bring civil actions under the Odometer Act must prove

that a violation was done with "intent to defraud." *Id.* § 32710.

Ryan Motors first seeks summary judgment of the Odometer Act claim regarding the failure to disclose that the Mustang had been previously damaged in an accident. Ryan Motors asserts that the Odometer Act does not make such conduct illegal. Edlund has not identified, and the Court has been unable to find, a provision in the Odometer Act that makes a failure to disclose serious vehicle damage actionable. *See* 49 U.S.C. §§ 32701-32711. The purposes of the Odometer Act are exclusively focused on odometers and assuring that the accurate mileage of vehicles is disclosed upon resale. *See* 49 U.S.C. § 32701. Summary Judgment is granted as to any allegations that Ryan Motors violated the Odometer Act by failing to disclose prior damage to the Mustang.

Next, both Ryan Motors and Edlund argue entitlement to summary judgment on the remaining Odometer Act claim, the certification to Edlund that the Mustang's mileage was 9,239 while Ryan Motors was allegedly aware that this was not the actual mileage. Ryan Motors asserts that Edlund has failed to properly aver the intent to defraud in the Amended Complaint as required by Rule 9(b) of the Federal Rules of Civil Procedure. Ryan Motors also argues that there is no evidence of any intent to defraud.

Edlund has complied with Rule 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Here, the circumstances of the fraud are set forth with sufficient specificity. Edlund's Amended Complaint alleges that a prior lessee of the Mustang alerted Ryan Motors that the odometer was not working during the lease and that Ryan Motors noted in a service record prior to its mileage

certification that the Mustang had a bad odometer. Am. Compl. ¶¶ 8, 10. The Amended Complaint then alleges that Ryan Motors knew that the Mustang's odometer reading was incorrect. *Id.* ¶ 12. This statement is sufficient under Rule 9(b). Under Rule 9(b), intent may be "averred generally." Edlund's Amended Complaint states that Ryan Motors violated the Odometer Act by failing to disclose, "with an intent to defraud", the actual mileage of the Mustang.

Ryan Motors asks for summary judgment on the ground that Edlund has no evidence that Ryan Motors intended to defraud Edlund. Under the Odometer Act, there are three ways of establishing an intent to defraud. *Regency Nissan, Inc. v. Jenkins*, 678 So.2d 95, 99 (Miss. 1996). The intent to defraud may be established by showing that (1) a defendant "had actual or constructive knowledge that the odometer reading was less than the actual miles traveled", *id.* (citing *Nieto v. Pence*, 578 F.2d 640, 641 (5th Cir. 1978)); (2) "by using reasonable care. . . [a defendant] would have had reason to know that the actual mileage exceeded the odometer reading", 678 So.2d at 99 (citing 578 F.2d at 641); or (3) a defendant acted in "reckless disregard in failing to determine if the odometer reading is incorrect", 678 So.2d at 99 (citing *Haynes v. Manning*, 917 F.2d 450, 452-53 (10th Cir. 1990)).

Edlund has presented testimony that Ryan Motors had actual knowledge, or at least constructive knowledge, that the odometer reading was incorrect. Kreatz testified that she brought the Mustang into Ryan Motors for service of the odometer and told them that the odometer was not registering all the miles that she was driving the car. Kreatz Dep. at 17-20. Ryan Motors' own invoice indicates that Ryan Motors determined that the odometer was not working when Kreatz brought it in for repair. *Id.* Ex. 2 at 37. Furthermore, Kreatz and her

husband testified that she notified Holm at Ryan Motors that the odometer was incorrect by a few hundred miles when the car was returned at the end of the lease term. *Id.* at 59; M. Kreatz Dep. at 10-12. Despite the fact that Holm does not specifically remember the incident or being told about the discrepancy, the Kreatzs' statements create a question of fact as to whether Ryan Motors actually knew, or constructively knew, that the Mustang's odometer was incorrect. Holm Dep. at 11-12. The law permits the jury to infer an intent to defraud from such evidence. *See Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248, 1253-54 (8th Cir. 1983).

Moreover, this evidence raises questions of fact as to whether Ryan Motors and its agents, had they exercised reasonable care, had reason to know there was a discrepancy. *See Nieto*, 578 F.2d at 641. Likewise, evidence that Ryan Motors knew about the problems with the odometer may show that Ryan Motors acted with reckless regard or failed to exercise reasonable care in determining the accuracy of the Mustang's odometer. *See Haynes*, 917 F.2d at 452-53. These questions of fact and what inferences may be drawn from them also thwart Edlund's Motion for Summary Judgment. Both summary judgment motions are denied.

**2. Fraudulent Misrepresentation**

Ryan Motors also asks for summary judgment of Edlund's Fraudulent Misrepresentation claim. Ryan Motors asserts that Edlund cannot show the required intent to defraud. Under Minnesota law, one element of a claim of fraudulent misrepresentation is that "the representer must know [the representation] to be false or, in the alternative, must assert it as of his own knowledge without knowing whether it is true or false." *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 193-94 (Minn. Ct. App. 1985). As discussed supra, Edlund has set forth sufficient evidence to create a question of fact on intent to defraud or whether Ryan Motors knew

the mileage representation to be false.

Ryan Motors argues that any alleged misstatements made by Ryan Motors concerning the mileage of the Mustang were not material, another required element of fraudulent misrepresentation, *id.*, because a 300 mile discrepancy is inconsequential. Kreatz believes that the odometer was off by 300, and not more than 500, miles at the conclusion of her lease. Kreatz Dep. at 75. While a 300 or 500 mile difference may or may not itself be material, there are facts in the record arguably indicative of a greater discrepancy. Although Kreatz thought the odometer worked after she brought it into Ryan Motors for repair, Ryan Motors' own records indicate both that it determined that the odometer was not working properly and that it did not do any repairs. Kreatz Dep. at 61, Ex. 2 at 37; Ryan Dep. at 103-105. Coupled with the alleged fact that Edlund noticed immediately that the odometer was not working properly when she first acquired the Mustang, the lack of repair issue raises questions of fact as to whether the odometer continued malfunctioning throughout the duration of Kreatz's lease, when the Mustang was driven thousands of miles. Edlund Dep. at 108-10; Kreatz Dep. at 89. The fraudulent misrepresentation claim survives summary judgment on the materiality of the misrepresentation.

Ryan Motors also asserts that the fraudulent misrepresentation claim fails because a 300 mile discrepancy did not damage Edlund. However, as discussed, there are questions of fact as to whether the discrepancy was in fact larger than 300 miles. Ryan Motors' Motion for Summary Judgment of Edlund's fraudulent misrepresentation claim is denied.

**B. Magistrate Order Appeal**

**1. Standard of Review**

Edlund is also appealing Judge Boylan's Order of May 1, 2001 ("Order"), which denied her Motion for Order Requiring Defendant to Post Bond [Doc. No. 77]. As a non-dispositive motion, the Order may only be reversed if it is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(a); Fed. R. Civ. P. 72(a). This is an "extremely deferential standard." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).

**2. Edlund's Appeal**

Edlund appeals the portion of Judge Boylan's Order that denies her motion to require Ryan Motors to post a $100,000 prejudgment bond. Edlund made an initial attempt to require Ryan Motors to post a $100,000 bond in February of 2001 [Doc. No 26], which was denied by Judge Boylan in a March 14, 2001 Order. [Doc. No. 48]. When Edlund previously appealed a portion of the March 14 Order to this Court, the denial of the bond requirement was not raised. [Doc. No. 57]. The March 14 Order was then affirmed by this Court in its entirety on April 27, 2001. [Doc. No. 84]. Edlund's recent Motion for Order Requiring Defendant to Post Bond was in effect the same motion that was earlier denied by Judge Boylan and affirmed by this Court. In fact, Edlund herself characterized it as a "renewed motion." Local Rule 7.1(g) requires that a party obtain express permission from the Court prior to making a motion to reconsider a previous decision. D. Minn. L. R. 7.1(g). Edlund failed to comply with this rule before setting forth the "renewed motion." Moreover, the motion was filed after the deadline in the case for filing non-dispositive motions. [Doc. Nos. 6, 24, 25]. The Order is affirmed.

Judge Boylan's decision to deny the request is also not contrary to law. In situations

where parties seek prejudgment attachment, state law controls such seizures. *Granny Goose Foods, Inc. v. Bhd. of Teamsters Local 70*, 415 U.S. 423, 436 n. 10 (1974). Edlund brought the motion under Minnesota Statutes sections 570.02 and 570.025. While section 570.02 limits the situations in which an attachment may be sought, it does not in and of itself provide for the attachment of property. *See Colman v. Mertes*, 408 N.W.2d 662, 665 (Minn. Ct. App. 1987); *cf.* Minn. Stat. §§ 570.02-570.026. In "ordinary circumstances" a claimant must proceed under section 570.026, which states that the attachment must "proceed by motion, and an order of attachment may issue only after notice and a hearing." *Id.* Section 570.025 provides that under "extraordinary circumstances . . . a claimant may apply for a preliminary attachment order 'to secure property prior to the hearing specified in section 570.026.'" *Id.* Judge Boylan's determination that Edlund failed to meet section 570.025's requirement that there be extraordinary circumstances is not "clearly erroneous or contrary to law." The Order is affirmed.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Summary Judgment Motion [Doc. No. 94] is **GRANTED** in part and **DENIED** in part. To the extent Plaintiff's Odometer Claim is based upon disclosures of the vehicle's collision history, Plaintiff's claim is **DISMISSED WITH PREJUDICE**. To the extent that Plaintiff's Odometer Claim is based upon the odometer representation, the claim remains.
2. Plaintiff's Partial Summary Judgment Motion [Doc. No. 115] is **DENIED**.
3. Magistrate Judge Boylan's Order of May 1, 2001 [Doc. No. 86] is **AFFIRMED** in its entirety. Plaintiffs' Appeal [Doc. No. 88] of the Order is **DISMISSED**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: August 1, 2001

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500